**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMAN WILLIAMS-MURRAY,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | No. 05-5749 |
| **v.** | : | |
| | : | |
| **ANTHROPOLOGIE, INC., et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is pro se Plaintiff Carman Williams-Murray's Affidavit of Bias and Prejudice [Document No. 37] dated November 6, 2006, seeking the Court's recusal from this matter. The facts relied on in support of this Motion are all matters of record. Accordingly, the issue that this Court will address is whether the record demonstrates an alleged racial bias and prejudice towards Plaintiff such that a reasonable person would conclude that there is a valid basis for Plaintiff's allegations.

## I. Factual Background

In early August 2005, Plaintiff, an African-American woman, entered Anthropologie's retail store located at Fifth Avenue and 16th Street, New York City, New York (the "store") to exchange previously purchased merchandise. Plaintiff browsed the display items throughout the store in order to select a new item to exchange for the previously purchased item. While Plaintiff walked around the store, Defendant Jane Doe ("Doe"), the store's manager, followed her.

When Plaintiff selected a new item for exchange, she walked to the check out counter to exchange the old item for the new one. Plaintiff then presented her receipt for the previously

purchased item to the cashier to exchange the merchandise. Meanwhile, Doe followed Plaintiff to the register and then walked behind the counter next to the cashier. Doe then looked closely at Plaintiff's purchase receipt.

Because Doe had followed her around the store and because Doe looked closely at her receipt, Plaintiff asked the name of the store's district manager. This inquiry caused Doe to respond "hostile[ly]" that she was a manager.[1] Further, Doe asked Plaintiff why she wanted the name of the district manager and whether she could help resolve Plaintiff's problem. Plaintiff informed Doe that "she was . . . the problem."[2] Plaintiff explained that she wanted to report to the district manager that Doe followed her and closely scrutinized her sales receipt. Doe, explaining why she followed Plaintiff around the store stated, "I just thought I saw something is all."[3] Plaintiff then asked Doe what she thought she saw, to which Doe responded, "You must have done something otherwise why are you getting so upset?"[4] Thereafter, Plaintiff completed her exchange and left the store.

## II. PROCEDURAL HISTORY

In response to Doe's conduct, Plaintiff filed this suit against Defendants on October 31, 2005, alleging violation of Title VII,[5] 42 U.S.C. § 1981,[6] and section 40 of the New York Civil

---

[1] Compl. ¶ 7.

[2] Id.

[3] Id. at ¶ 22.

[4] Id.

[5] 42 U.S.C. § 2000e, et seq.

[6] Plaintiff's Complaint does not expressly allege a violation of 42 U.S.C. § 1981. Plaintiff does, however, provide 42 U.S.C. § 1981 as one of the bases for the Court's jurisdiction over this matter. In light of the Third

Rights Law,[7] and further alleging that Defendant Anthropologie, Inc. ("Anthropologie") negligently hired, retained, and supervised Doe, and that Doe's comments were slanderous per se. On December 19, 2005, Plaintiff requested to proceed in forma pauperis—a request this Court granted in an Order dated January 18, 2006 [Document No. 3].

Defendant Anthropologie filed a Motion for Extension of Time to File Answer, Plead, or Otherwise Respond to the Complaint [Document No. 7] on April 7, 2006, and the Court granted Defendants an extension until May 12, 2006, to respond to Plaintiff's Complaint. On May 12, 2006, Defendant Anthropologie filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Document No. 10].

This Court subsequently scheduled a Rule 16 conference and ordered the parties to report to the Court on August 8, 2006 [Document No. 11]. Only Defendant Anthropologie's counsel appeared at the scheduling conference.

The Court received no further correspondence from Plaintiff until October 16, 2006, when Plaintiff filed her first Motion for an Order Granting Extension of Time to Respond to Defendant's Motion to Dismiss [Document No. 16]. Plaintiff alleged in her Motion that the Court has not been impartial in this matter and that she was never served a copy of Defendant's Motion to Dismiss.

On October 18, 2006, the Court issued an Order [Document No. 15] in response to Plaintiff's Motion for Extension of Time and granted Plaintiff leave to file a response to Defendant's

---

Circuit's mandate that "pro se complaints should be read liberally," Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004), the Court will construe the Complaint as if it had set forth a distinct claim under § 1981.

[7] N.Y. Civ. Rights Law § 40 (McKinney 2006).

Motion to Dismiss on or before October 27, 2006. The Court noted in footnote one of that Order that it was troubled by Plaintiff's allegations that the Court had not been impartial in this matter as only scheduling orders had been issued to date. Additionally, in response to Plaintiff's alleged failure to receive Defendant's Motion to Dismiss, the Court noted that the Defendant attached a Certificate of Service to its Motion to Dismiss attesting to the service of Plaintiff by mail at her address of record and that insofar as the parties act in accordance with the service rules outlined in the Federal Rules of Civil Procedure, this Court will require no more.

On October 24, 2006, Plaintiff faxed a Motion to Reconsider Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion to Dismiss [Document No. 17]. Plaintiff reasoned that because she had "two pending appeals [in unrelated matters] with looming deadlines," because she did not have a copy of Defendant's Motion to Dismiss, and because of "chronic health problems," she could not meet the October 27 deadline ordered by the Court.[8] Plaintiff further noted that if an item is properly mailed with postage, the law provides a rebuttable presumption that the addressee received it.[9] The Court, in an Order dated October 25, 2006 [Document No. 16], granted, as a courtesy to the pro se Plaintiff, leave to file a response to Defendant's Motion to Dismiss on or before November 3, 2006. As an additional courtesy, the Court appended a copy of Defendant's Motion to Dismiss. The Court noted, however, that while Plaintiff properly set forth the rebuttable presumption concerning receipt of mail, the evidence proffered by the Plaintiff was insufficient to rebut this presumption.

Plaintiff had appended to her October 24th Motion a letter from the United States

---

[8] Pl.'s Mot. to Reconsider [Doc. No. 17] ¶¶ 10 and 11.

[9] See, e.g., Blomeyer v. Levinson, No. 02-cv-8378, 2006 WL 463503, at *5 (E.D. Pa. Feb. 21, 2006).

Postal Service detailing problems encountered with delivering mail to Plaintiff's home address, in which the Postal Service indicated it would act immediately to correct the delivery problems. This letter is dated September 16, 2005. Since Defendant's Motion to Dismiss was filed May 12, 2006, nearly eight months after the Postal Service apparently corrected this delivery problem, this Court did not consider the Postal Service letter sufficient to overcome the presumption that Plaintiff received Defendant's Motion to Dismiss by mail.

On October 29, 2006, Plaintiff faxed a copy of the Court's October 25th Order with the words "the Court has appended Defendant's Motion to Dismiss to this Order" circled and marginal notes questioning "where is it?" In response, the Court issued a Clarification Order reaffirming Plaintiff's extension to respond to Defendant's Motion to Dismiss on or before November 3, 2006, and again, as a courtesy, appended another copy of Defendant's Motion to Dismiss. The Court noted in the Clarification Order that Plaintiff's original deadline to respond to Defendant's Motion to Dismiss was May 26, 2006 (fourteen days after Defendant's filing date of May 12, 2006).[10] The Court, by granting leave of Court to Plaintiff to file a response to Defendants' Motion to Dismiss on or before November 3, 2006, effectively granted Plaintiff an extension of over five months to respond to Defendants' Motion to Dismiss. As a final note, the Court, affirming that a copy of Defendants' Motion to Dismiss was appended to the previous Order of October 25, made clear that further misrepresentations of the record by Plaintiff would result in sanctions.

After Plaintiff's November 3, 2006 response deadline passed, the Court received a letter from Plaintiff [Document No. 35] dated November 6, 2006.[11] The November 6 letter alleges

---

[10] See E.D. Pa. R. Civ. P. 7.1(c).

[11] The Court received Plaintiff's letter on November 13, 2006.

in part that the undersigned is a "racist and bigoted judge," questions whether the undersigned is "a member of the Klan," argues that "[a] dirty, racist judge like you would sit on a case and own stock in the Defendant's co[mpany]," and implies that the undersigned should be impeached for "spew[ing] racist [and] racially-motivated hostility under the guise of court orders toward minority litigants."[12] Plaintiff additionally sets forth that she will file an Affidavit of Bias and Prejudice seeking the Court's recusal.[13]

Plaintiff subsequently filed the Affidavit of Bias and Prejudice [Document No. 37] now before the Court. Plaintiff generally alleges that the Court's unwillingness to grant Plaintiff an extension to respond to Defendants' Motion to Dismiss beyond November 3, 2006, even though she did not receive the courtesy copies of Defendants' Motion until one day prior to and three days after the November 3 deadline, combined with the Court's charge that continued misrepresentations of the record by the Plaintiff would be subject to sanctions, is a "judicial lynching" based upon Plaintiff's African-American race.[14]

## III. LEGAL STANDARD

The two principal statutes dealing with judicial recusal are 28 U.S.C. § 144, "Bias or prejudice of a judge," and 28 U.S.C. § 455, "Disqualification of justice, judge, or magistrate." Section 144 is aimed exclusively at actual bias or prejudice, whereas § 455 deals not only with actual bias and other specific conflicts of interest, but also with the appearance of partiality.

Section 144 provides:

---

[12] Pl.'s Nov. 6, 2006 Ltr. [Doc. No. 35].

[13] Id.

[14] Pl.'s Aff. of Bias & Prejudice ¶¶ 4, 6-11, 13, 15, 16, 22, & 24.

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

The filing of a § 144 motion does not automatically require a judge to recuse himself; the judge "must first pass on the . . . sufficiency of the motion."[15] Procedurally, § 144 first requires the filing of an affidavit. Second, § 144 requires a certificate of good faith to accompany the affidavit and that, in the case of a pro se movant, the certificate of good faith must be signed by any member of the bar of the court.[16] Beyond the procedural requirements, although the court must accept a § 144 affidavit's factual allegations as true, the court need not accept conclusory statements or opinions.[17] The only test is whether, assuming the truth of the facts alleged, a reasonable person would conclude that a personal bias, as distinguished from a judicial bias, exists.[18]

Section 455 provides in part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

[15] Schreiber v. Kellogg, 838 F. Supp. 998, 1003 (E.D. Pa. 1993).

[16] See Smith v. Danyo, 585 F.2d 83, 85 (3d Cir. 1978) ("The requirements of § 144 are explicit: an affidavit by a party and a certificate by counsel stating that it is filed in good faith."); see also Thompson v. Mattleman, Greenberg, Schmerelson, Weinroth & Miller, No. Civ. A. 93-2290, 1995 WL 318793, at *1 (E.D. Pa. May 25, 1995) (holding that pro se movant satisfies § 144 provision requiring certificate of counsel of record if certificate is signed by any member of the bar of the court).

[17] See United States v. Vespe, 868 F.2d 1328, 1340 (3d Cir. 1989).

[18] Mims v. Shapp, 541 F.2d 415, 417 (3d Cir. 1976).

(b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

Unlike § 144, § 455 requires no motion or affidavit. A judge is obligated to recuse himself whenever any of the circumstances described in § 455 arise. Mirroring § 144, the standard for determining disqualification under § 455 is whether a reasonable person would be convinced that the judge was biased.[19]

## IV. DISCUSSION

Plaintiff's Affidavit of Bias and Prejudice requests the undersigned's recusal based on an alleged racial bias towards African-Americans. As a preliminary matter, Plaintiff has failed to provide a certificate of good faith signed by a member in good standing with the Eastern District of Pennsylvania and has therefore failed to meet the procedural requirements under 28 U.S.C. § 144.[20]

Since Plaintiff appears pro se, however, this Court will not summarily deny the Affidavit of Bias and Prejudice on this ground, but instead will address the merits of Plaintiff's Affidavit.

Substantively, Plaintiff's Affidavit fails to allege any specific facts that would lead a reasonable person to believe the Court is personally biased against her or to support a reasonable suspicion of bias under either 28 U.S.C. § 144 or 28 U.S.C. § 455. Plaintiff's allegations rest

---

[19] See, e.g., Bey v. Philadelphia Passport Agency-M, Civ. A. No. 86-4906, 1986 WL 14733, at *2 (E.D. Pa. Dec. 24, 1986).

[20] Moreover, the affidavit is neither notarized nor does the Plaintiff's signature appear with the language required under 28 U.S.C. § 1746 for unsworn declarations, i.e., "I declare under penalty of perjury that the foregoing is true and correct."

primarily on this Court's failure to provide Plaintiff with courtesy copies of Defendant's Motion to Dismiss until one day prior to and three days after the November 3 deadline to respond to Defendants' Motion to Dismiss,[21] and the Court's unwillingness to extend the November 3 deadline. Moreover, Plaintiff alleges that the Court previously granted Defendants a "significant time to file a responsive pleading to the Complaint" and the Court's failure to grant a similar extension to Plaintiff evidences bias.[22]

First, Plaintiff has ignored this Court's holding in the October 25th Order which clearly stated that the Plaintiff failed to rebut the presumption that she received a copy of Defendants' Motion to Dismiss at the time of its mailing, i.e., May 12, 2006. Based on this finding, all of Plaintiff's allegations that she failed to receive Defendant's Motion to Dismiss are without merit. Although the Court, well in advance of the several extensions granted to Plaintiff, twice provided courtesy copies of Defendants' Motion to Dismiss to accommodate the pro se Plaintiff, the presumption that Plaintiff received a copy of Defendant's Motion to Dismiss in May 2006 still applies and, accordingly, the dates on which any courtesy copies of Defendants' Motion to Dismiss were received are irrelevant.

Second, as noted above, the Court effectively granted Plaintiff more than five months to respond to Defendants' Motion to Dismiss. Thus, Plaintiff misrepresents that Defendants were granted a significantly longer extension to file a responsive pleading to the Complaint. To the

---

[21] While the Clerk's Office mailed two separate courtesy copies of Defendants' Motion to Dismiss to the Plaintiff prior to the November 3, 2006 response deadline ordered by the Court, Plaintiff claims she did not receive the first copy until November 2, 2006, and that she did not receive the second copy until November 6, 2006. See Pl.'s Aff. of Bias & Prejudice ¶ 10.

[22] Pl.'s Aff. of Bias & Prejudice ¶ 14.

contrary, Plaintiff had a significantly longer extension than was granted to Defendants, who were granted only a thirty-day extension to file a responsive pleading to the Complaint.

Third, all of Plaintiff's arguments set forth in the Affidavit are based on her displeasure with the Court's previous orders. The Third Circuit has repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal.[23] Moreover, the Supreme Court has held that "the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[24] Here, the Plaintiff has provided no extrajudicial bases to require recusal and has limited her Affidavit solely to this Court's prior rulings. "Prior rulings of the Court cannot provide such a factual basis [so as to require recusal]."[25]

Ultimately, this Court finds no factual support in Plaintiff's Affidavit of Bias and Prejudice that would lead a reasonable person to believe that this judge is prejudiced against any race in general or Plaintiff's African-American race in particular. Nor is this Court aware of any other facts or circumstances that would warrant an obligatory recusal under § 455.

For the aforementioned reasons, Plaintiff's Affidavit of Bias and Prejudice is **DENIED** and this judge will not recuse herself under 28 U.S.C. § 144 or 28 U.S.C. § 455. An appropriate Order follows.

---

[23] See Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir. 1990).

[24] United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

[25] Bumpus v. Uniroyal Tire Co., 385 F.Supp. 711, 713 (E.D. Pa. 1974).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMAN WILLIAMS-MURRAY,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | No. 05-5749 |
| **v.** | : | |
| | : | |
| **ANTHROPOLOGIE, INC., et al.,** | : | |
| **Defendants.** | : | |

---

**ORDER**

**AND NOW**, this 11th day of December 2006, in consideration of Plaintiff's Affidavit of Bias and Prejudice [Document No. 37], it is hereby

**ORDERED** that Plaintiff's Affidavit of Bias and Prejudice is **DENIED** for the reasons set forth in the attached Memorandum Opinion.

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**
Cynthia M. Rufe, J.